UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PHADRA V. WESTON,

                              Plaintiff,      **No. 1:16-cv-00272(MAT)**
                                              **DECISION AND ORDER**

             -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

## INTRODUCTION

Represented by counsel, Phadra V. Weston ("Plaintiff") instituted this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On April 21, 2010, Plaintiff filed a Title XVI application for SSI, alleging a disability onset date of June 3, 2006, later amended to April 21, 2010, due to depression, anxiety, asthma, diabetes, high blood pressure and high cholesterol. (T.351-54,

---

[1]
    Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

368).[2] Plaintiff's claim was denied on May 27, 2010, and she filed a timely written request for hearing. On April 25, 2011, administrative law judge William M. Weir ("ALJ Weir") conducted a hearing in Buffalo, New York, at which Plaintiff appeared with her attorney and testified. Vocational expert Julie A. Andrews also appeared but was not called to testify.

On April 13, 2012, ALJ Weir issued an unfavorable decision (T.164-70), finding that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, provided it involved only simple, repetitive tasks in a consistent, known setting; and only limited personal contact, defined as occasional contact with co-workers, supervisors, and the general public. (T.167). ALJ Weir proceeded to find Plaintiff capable of performing her past relevant work ("PRW") as a residential home health aide. (T.170).

The Appeals Council granted Plaintiff's request for review on September 3, 2013. (T.176-79). The Appeals Council identified several errors warranting remand, including that the basis for the RFC assessment was unclear. The Appeals Council noted that the ALJ's decision indicated that the RFC was based in part upon a consultative examiner's evaluation and an opinion of a state agency reviewer, but the record did not contain such evidence. (T.176).

---

[2] Citations to "T." in parentheses refer to pages from the transcript of the certified administrative record.

The Appeals Council also found that the record was unclear as to whether Plaintiff's past job as a home healthcare aide satisfied the criteria used to determine PRW. Moreover, ALJ Weir's decision did not specify the physical and mental demands of Plaintiff's past job, or compare her RFC with the physical and mental demands of her past job. (T.177). On remand, the ALJ was directed to, among other things, "[o]btain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CPR 416.912-913)[,]" which "additional evidence may include, if warranted and available, a consultative examination with psychological testing and medical source statements about what the claimant can still do despite the impairments[;]" and "[f]urther consider whether the claimant's past work constitutes past relevant work[.]" (T.177, 178).

ALJ Weir conducted a supplemental hearing on March 14, 2014, in Buffalo, New York. At the ALJ's request, State agency review psychologist Sharon Kahn,[3] Ph.D. testified and offered her opinion based solely on her review of a partial record.[4] Vocational expert

---

[3]

The doctor's surname is alternatively spelled "Khan" in the record and by the parties. On the doctor's resume, her surname is spelled "Kahn," so that is the spelling the Court will use.

[4]

Dr. Kahn testified she did not have treatment records more current than two years prior to the second hearing on March 14, 2014. (T.21). Dr. Kahn stated that her testimony was based on her own personal notes, not the full record, explaining, "I don't have the [computer] disc, because I'm not in a place where I have access to a computer right now. All I have is my notes and the last

Rachel A. Duchon ("the VE") also appeared and testified. On October 2, 2014, ALJ Weir issued an unfavorable decision. (T.183-205).

In her request for review by the Appeals Council, Plaintiff sought an extension of time to submit legal arguments and additional evidence. (T.4-6). The Appeals Council stated that it would not act on Plaintiff's case for 25 days. (T.4). However, Plaintiff apparently did not submit any additional evidence, and the Appeals Council denied Plaintiff's request for review on February 11, 2016 (T.1-3), making ALJ Weir's decision the Commissioner's final decision. Plaintiff then timely commenced this action.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court will discuss the record evidence further below, as necessary to the resolution of the parties' contentions.

For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

## THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation established by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

---

treatment as March 19, 2012." (T. 22).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2010, the amended onset date.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: agoraphobia, depressive disorder, and anxiety disorder. The ALJ found that Plaintiff's substance abuse disorder is non-severe because it is in sustained remission; her pancreatitis is non-severe because it did not last at least 12 consecutive months; and her asthma, diabetes, hypertension, and hyperlipidemia are non-severe because they do not cause more than minimal limitations in her ability to perform work-related activities.

At step three, the ALJ found that Plaintiff's impairments, singly or together, do not meet or medically equal the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ in particular considered Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Disorders). Applying the special technique, the ALJ assessed Plaintiff as having mild restrictions in activities of daily living; moderate difficulties in social functioning; and mild difficulties in maintaining concentration, persistence or pace. The ALJ found that Plaintiff had not had any episodes of decompensation.

The ALJ then found that Plaintiff has the RFC to perform a full range of work at all exertional levels, except that she can

have only brief and superficial contact (i.e., no more than 1 hour for each contact) with co-workers and supervisors and no contact with the public.

At step four, the ALJ found that Plaintiff has some prior work experience; however, based upon her earnings record, the work was not vocationally relevant. Therefore, Plaintiff has no PRW.

At step five, the ALJ found that Plaintiff was 39 years-old on the application date, making her a "younger individual age 18-49," with a limited education and the ability to communicate in English. The ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC could perform the requirements of representative occupations such as collator operator (DOT #208.685-010, light, unskilled, SVP 2, of which there are 225,310 jobs in the national economy and 23,000 regionally); and routing clerk (DOT #222.587-038, light exertion, unskilled, SVP 2, of which there are 316,447 jobs nationally and 23,842 jobs regionally).

Accordingly, ALJ Weir found that Plaintiff was not under a disability as defined by the Act from April 21, 2010, through October 2, 2014, the date of decision.

## SCOPE OF REVIEW

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, the district court is limited to determining whether the Commissioner's findings were

-6-

supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

### I. The ALJ Failed to Develop the Record and Comply with the Appeals Council's Remand Order.

Plaintiff argues that the ALJ failed to fulfill his duty to develop the record because he did not obtain certain mental health treatment records from Lake Shore Behavioral Health ("Lake Shore"). At the second hearing, Plaintiff's counsel made it clear that Plaintiff's mental health records since April of 2012 had been requested, but had not been furnished by Lake Shore by the time of the hearing. (T.10). Plaintiff's counsel indicated that "we're going to have to keep the record open to get [the updated

records]." (T.10). The ALJ did not take any further steps to obtain these records. Plaintiff argues that this was an abdication of the ALJ's statutory duty to develop the record, as well as a violation of his duty to comply with the Appeals Council's remand order directing him to develop a complete administrative record. (T.177). (See Pl's Mem. at 15-18).

It is well established that the ALJ has a duty to develop the record, even when the claimant is represented by counsel. E.g., Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). This duty is not unlimited; the ALJ need only make every reasonable effort to assist the claimant in obtaining his medical records. See 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.912(d). Here, however, the ALJ did not make any reasonable effort to obtain these records, despite the fact that the medical expert he had called to testify, Dr. Kahn, stated that the record was too incomplete for her to come to a valid conclusion. Dr. Kahn noted that "two years is a significant amount of time if you are trying to obtain Social Security but have not had a recent mental health evaluation . . . ." (T.27). Plaintiff's counsel asked Dr. Kahn whether it would change her opinion if Plaintiff had been in mental health treatment from 2012 until the present time, and Dr. Kahn replied, "Yes, that would . . . ." (Id.). When Dr. Kahn was informed that Plaintiff actually had been in mental health treatment from 2012 to 2014, but they did not have the records, she

responded "Well, that's a big problem for me. That's a big problem for me. I'm sorry." (Id.). Dr. Kahn also said, "I would like to have a more recent independent psychological examination from like one of those IMA [sic] places." (Id.). Given the foregoing testimony by the ALJ's expert witness, the Commissioner cannot plausibly argue that the record is sufficiently complete and therefore any error by the ALJ in fulfilling his statutory duty is harmless. The record here is clearly incomplete, and remand is required to obtain the missing records from Lake Shore.

## II. The ALJ Erroneously Gave "Great Weight" to State Agency Review Psychologist Dr. Kahn's Testimony and Opinion

### A. Dr. Kahn's Opinion Is Based on an Incomplete Record and Cannot Constitute Substantial Evidence

By Dr. Kahn's own admission, she was troubled at having to base her opinion regarding the severity of Plaintiff's mental limitations on a record that was missing two years of mental health treatment records and a recent, in-person psychological examination. (T.27-28). An opinion that is not based on a complete medical record cannot constitute substantial evidence. See Tarsia v. Astrue, 418 F. App'x 16, 18 (2d Cir. 2011) (unpublished opn.) ("Because it is unclear whether [non-examining physician] Dr. Manley reviewed all of Tarsia's relevant medical information, his opinion is not 'supported by evidence of record' as required to override the opinion of treating physician Dr. LoFaso. Accordingly, the ALJ erred in placing substantial weight on Dr. Manley's

possibly ill-founded opinion and in allowing Dr. Manley's opinion
to override that of Dr. LoFaso."); Stevens v. Comm'r of Soc. Sec.,
No. 3:15-CV-524(ATB), 2016 WL 3199515, at *7 (N.D.N.Y. June 8,
2016) ("[T]he assignment of significant weight to a non-examining
consultant's opinion is error when the consultant reviewed an
incomplete record that lacks notes or opinions by the [claimant]'s
treating psychiatrist.") (citing Coleman v. Colvin, No.
14-CV-2383(SAS), 2015 WL 1190089, at *10 (S.D.N.Y. Mar. 16, 2015)
("Great weight should not be accorded to the opinion of a
non-examining State agency consultant whose opinion is based on an
incomplete record that lacks the opinion of the claimant's primary
treating psychiatrist. Though the opinions of Dr. Mohsin or Dr. Kim
were not entirely consistent with the rest of the medical evidence
in the record, their opinions were not wholly unreliable. It is
possible that Dr. Apacible's conclusions may have differed had he
reviewed those opinions. Thus, the ALJ's decision to assign 'great
weight' to Dr. Apacible's opinion constitutes error.") (footnote
and citations omitted)); Jones v. Comm'r of Soc. Sec., 10 CV 5831
RJD, 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012) ("[B]y [the]
. . . hearing date, the disability examiner's opinion that Jones
could perform light work was 1.5 years stale, and did not account
for her deteriorating condition."); Griffith v. Astrue, 08-CV-6004-
CJS, 2009 WL 909630, at *9 n. 9 (W.D.N.Y. Mar. 31, 2009) (finding
that "the State Agency Officials' reports, which are conclusory,

stale, and based on an incomplete medical record, are not substantial evidence").

In assigning significant weight to Dr. Kahn's opinion, ALJ Weir ignored the doctor's own testimony that she drew an adverse inference against Plaintiff based on her erroneous belief that Plaintiff had not sought mental health treatment for several years. Dr. Kahn admitted that her opinion would have differed if she had been able review the most recent records from 2012 through the date of the 2014 hearing. The ALJ's error in relying on Dr. Kahn's testimony was not harmless. See, e.g., Stevens, 2016 WL 3199515, at *7 ("In assigning significant weight to Dr. Kamin's opinion, the ALJ failed to consider whether that opinion may have differed if Dr. Kamin had been able to review this evidence, which consisted of almost three years worth of additional psychiatric analysis of [the claimant].") (citations omitted).

**B.  Dr. Kahn's Testimony Was Tainted by Bias.**

"[A]n ALJ does not face a claimant . . . in an adversarial posture." Peed v. Sullivan, 778 F. Supp. 1241, 1245 (E.D.N.Y. 1991). "Rather, the ALJ has a duty to ensure that the claimant receives 'a full hearing under the Secretary's regulations and in accordance with the beneficent purpose of the [Social Security] Act.'" Id. (quoting Gold v. Secretary of Health, Education, and Welfare, 463 F.2d 38, 43 (2d Cir. 1972); citing Echevarria v. Secretary of Health and Human Servs., 685 F.2d 751, 755 (2d Cir.

1982)). When an ALJ confronts a claimant with a negative bias and without impartiality, he undermines the essentially judicial nature of an ALJ's duties. Peed, 778 F. Supp. at 1245. The Court finds that these principles necessarily apply to witnesses called by an ALJ on the Commissioner's behalf.

Dr. Kahn's bias against claimants with mental health impairments pervaded her entire hearing testimony, making it difficult to whittle down the objectionable portions to a few representative examples. From the outset, Dr. Kahn appeared overtly hostile toward Plaintiff's attorney, frequently answering his questions with a question or refusing to answer the question asked:

> Q[5]    Well, but she hasn't been able to leave her house.
> How would she all of a sudden transform herself so
> that she'd be able to leave her house?
>
> A    How does she get to her medical appointments? She
> needs to have some medical appointments. She leaves
> the house to get her medications, she leaves the
> house for those things, so if she leaves the house
> for one thing, she can leave the house for another
> thing.
>
> Q    Well, she leaves the house on sporadic occasions
> with somebody else. I mean she's not going to be
> able to do that if she has a five day a week job.
> So if she's not able to leave the house
> independently and hasn't been able and that's what
> her records show, I'd like to know what the basis
> of your opinion is that she would [all of] a sudden
> be able to do that.
>
> A    As I said, she's able to make her appointments and
> she's able to take care of herself and she is able
> to maintain concentration, persistence, and pace.

_____

[5]     In the quoted excerpts, "Q" indicates questioning by Plaintiff's attorney, and "A" indicates responses by Dr. Kahn.

And, you know, so that's, you know, that's that.
You know, if she can leave the house for one thing
she can leave the house for another thing.

Q    So if you-

A    There's no evidence that she-it's called being in
psychotherapy and working on a goal. . . .

(T.16).

In addition to refusing to answer some questions outright or
providing non-responsive answers, Dr. Kahn implied that a person
cannot be found disabled unless she has a work history:

Q    No. You're not—that's not my question. My question
is, is there any evidence that her mental health
condition, her major depression and PTSD allowed
her to be able to go to work five days a week, for
eight hours a day, from 2008 through April of 2012
when the records end? Is there-I mean is there any
evidence in the records showing her having the
ability to do that?

A    She has no work history. I cannot say for what
reason she has no work history. There are many
reasons why people have no work history besides
mental health conditions. What is her reason for
not having a work history? I do not know. People go
to work with mental health histories. People-I have
had patients who are schizophrenic and they through
kindergarten are exemplary. And then in the summer
they take a nice big de-stressing break. There is
[sic] mental health issues do not prevent you from
working at very high levels. What her reason for
not being able to work is, is not necessarily due
to mental health reason.

(T.25-26).

Dr. Kahn also injected irrelevant commentary throughout her
testimony and dismissed Plaintiff's diagnosis of PTSD based on her
general belief that very few of individuals diagnosed with PTSD
have "actual PTSD":

-13-

A        . . . . Everybody has symptoms of depression at
                 sometimes. Everybody has symptoms of anxiety and
                 everybody-80 percent of the English population has
                 had traumatic exposure and very few of the people
                 who have had traumatic exposure actually suffer
                 from PTSD. It's very much what's [sic] understood.
                 I'm-actually right now I'm about to get ready to
                 present on PTSD. It's very much misunderstood as to
                 how disabling it isn't- . . . . Less than 10
                 percent has actual PTSD. And PTSD is not so
                 disabling. It is a condition that stables [sic]
                 usually for years and years. People go around and
                 function on it. . . .

(T.23-24).

        Perhaps most concerning is Dr. Kahn's repeatedly expressed

belief that mental impairments cannot be disabling:

        A        Mental health conditions do not prevent anybody
                 from working at the highest level of functioning,
                 period. It is a mental health condition. It does
                 not impair you to work or to take care of your
                 personal needs or anything by itself. Symptoms of
                 mental health issues do not prevent people from
                 working.
                                        . . .

        A        Mental health problems, as you look at the DSM,
                 there     is    the    difference    between    having
                 symptomatology. The-[INAUDIBLE] an example of
                 depression: being sad, being blue, having, you
                 know, depressed thoughts, being distraught in your
                 mood. But you know, people still go to  work every
                 day. They may not be fun people to hang around
                 with. . . . . They maybe can't wait to come home
                 and just go back to bed, but they get up, they go
                 to school, they go to work. There's no reason.
                                        . . .

        A        It does not stop you from functioning, mental
                 health conditions, unless-there are a few mental
                 health conditions that do stop you from functioning
                 and that is, you know, when you have significant
                 psychosis that is not being controlled. I remind
                 you by the way that there are schizophrenics who
                 have won the Nobel Prize-

                                -14-

> . . .
>
> and go to work every day at Simpson University
> [sic] and make contributions.

(T.30). These sweeping generalizations by Dr. Kahn are wholly
contrary to basic tenets of Social Security law, regulations and
policy.

The excerpts quoted above demonstrate that the ALJ's
psychological expert witness, Dr. Kahn, took on an extremely
adversarial stance vis-à-vis Plaintiff, contrary to the letter and
the spirit of the law. See Gold, 463 F.2d at 43 ("Hearings under
the Social Security Act are non-adversary[.]") (citation omitted);
Pronti, 339 F. Supp.2d at 492 ("If, in fact, the ALJ holds a
general bias against Social Security claimants, this strikes at the
very core of due process."). The Court has no difficulty in
concluding that the ALJ's denial of Plaintiff's request to strike
Dr. Kahn's testimony, and his subsequent heavy reliance on that
testimony, was manifestly prejudicial to Plaintiff. Reversal is
required on this basis.

### III. Errors in Regard to Treating Psychiatrist's Opinion

Plaintiff contends that the ALJ erred in failing to develop
the record with regard to the opinion of treating psychiatrist Dr.
Hong Rak Choe. Plaintiff also argues that the ALJ misapplied the
treating source rule in evaluating Dr. Choe's opinion.

On May 3, 2010, Dr. Choe completed a check-the-box form
concerning Plaintiff's mental impairments. (T.616-18). The form was

titled "Medical statement concerning depression with anxiety, OCD, PTSD or panic disorder for Social Security disability claim." It is unclear who generated this form; it does not appear to be from the Social Security Administration. Under Patient Signs and Symptoms, Dr. Choe placed checkmarks next to the following: sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, hallucinations, generalized persistent anxiety, recurrent panic attacks, and recurrent and intrusive recollections of a traumatic experience. (T.616). Dr. Choe then rated Plaintiff's "Work Limitations Related to Psychiatric State." (T.617-18). He opined that Plaintiff was "not significantly impaired" in her ability to remember locations and work-like procedures, understand and remember short and simple instructions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers and peers without distracting them, maintain socially appropriate behavior, adhere to standards of neatness and cleanliness, remember, understand and carry out short and simple instructions, be aware of normal hazards and take appropriate precautions. Dr. Choe opined that Plaintiff was "moderately impaired" in her ability to understand and remember detailed instructions, carry out short and simple instructions and detailed instructions, make simple work-related decisions, ask simple questions or request assistance, respond appropriately to changes

in the work setting, and set realistic goals or make plans independently of others. Dr. Choe indicated that Plaintiff was "markedly impaired" with respect to her ability to maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, and travel in unfamiliar places or use public transportation. Finally, Dr. Choe opined that Plaintiff was "extremely impaired" with respect to her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with and proximity with others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. Dr. Choe also commented that he had not observed Plaintiff in a work setting. (T.618). No questions were unanswered and no areas were left blank on the form.

However, ALJ Weir asked Dr. Choe to clarify his opinion in a letter dated October 16, 2013. In the letter, ALJ Weir asked Dr. Choe when he first began treating Plaintiff; what was the frequency of treatment; what clinical diagnoses led him to assign the various functional limitations in his report; whether these limitations existed at the stated severity on June 3, 2006, and, if so, whether they have continued at that level since then; and if

the diagnoses and limitations did not exist as of June 3, 2006, for what period they applied. (T.426). ALJ Weir sent another copy of the letter to Dr. Choe on November 4, 2013. (T.427). Dr. Choe did not reply to either letter as of the date of the hearing.

As an initial matter, it appears to this Court that ALJ Weir sought clarification on some matters that should have been apparent from a review of the record, such as the start-date of treatment, and the frequency of treatment. Indeed, the Commissioner was able to determine that Dr. Choe treated Plaintiff at least until April 2010, and to identify the treatment notes of Plaintiff's visits with Dr. Choe. (See Def's Mem. at 4 ("From October 28, 2008 through April 5, 2010, Dr. Rak Choe treated Plaintiff. Dr. Choe diagnosed major depressive disorder with psychotic features, PTSD, rule out panic disorder, and rule out bipolar disorder. He prescribed medications and supportive psychotherapy. During this time, Plaintiff cancelled or missed a number of appointments.") (internal citations to record omitted)). Also as discussed above, the record is incomplete regarding treatment notes from Lake Shore, where Dr. Choe practiced. Plaintiff's attorney emphasized at the hearing that there were additional records from Lake Shore from 2012 to 2014 that had been requested but not provided. As far as what clinical diagnoses led Dr. Choe to assign the various functional limitations in his report, the Commissioner again was able to determine from the record that, according to Dr. Choe, Plaintiff

had confirmed diagnoses of major depressive disorder with psychotic features and PTSD, and "rule out" diagnoses of panic disorder and bipolar disorder. As to the ALJ's question concerning whether the limitations existed at the stated severity on June 3, 2006, that date is incorrect given that Plaintiff later amended her onset date to April 21, 2010. Furthermore, given that Plaintiff was not referred to Lake Shore until August 4, 2008 (T.484-88), and did not start treating with Dr. Choe until October 28, 2008 (T.519-48), it is doubtful that he would have been able to opine on her mental health status in June of 2006.

Nevertheless, the final question in ALJ Weir's letter does request pertinent information, namely, the specific period during which the diagnoses and limitations assigned by Dr. Choe applied. Although Dr. Choe did not leave any items on the form blank, the form itself did not request information as to the start date of the limitations.

Also, there is a question as to when Dr. Choe stopped treating Plaintiff. As noted above, Plaintiff amended her onset date to April 21, 2010. While there are treatment notes in the record confirming that Dr. Choe treated Plaintiff at Lake Shore through at least April 5, 2010, it is unclear whether he, personally, was treating her at Lake Shore on the date he completed the disability questionnaire (May 3, 2010). It is clear, however, that Plaintiff was getting mental health treatment at Lake Shore in May 2010,

since the records show she attended psychotherapy with Social Workers Thomas Grinnell and Thea Pouskaris at Lake Shore through at least March 12, 2014. (T.924). Plaintiff also saw psychiatrist Dr. Alicia Saldana at Lake Shore on October 26 and December 21, 2010; and on February 22, March 22, and May 10, 2011. (T.742-47). This suggests that Dr. Saldana may have taken over Plaintiff's case from Dr. Choe sometime between April or May 2010, and October 2010. However, clarification is required on this and several other issues regarding Plaintiff's psychiatric treatment with Drs. Choe and Saldana. Remand for this purposes is necessary.

Because the record is incomplete and there are several questions that must be answered about the chronology of Plaintiff's treatment, the Court finds that it would be premature to address Plaintiff's argument that the ALJ misapplied the treating source rule and erroneously weighed Dr. Choe's opinion.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is legally erroneous and is not supported by substantial evidence. Accordingly, the Commissioner's decision is reversed. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this opinion.

Specifically, on remand, the Commissioner is directed to use all means available to obtain the Lake Shore Behavioral Health treatment records identified as missing by Plaintiff's attorney at the second hearing; the Commissioner is directed to send Mental Residual Functional Capacity Questionnaires to the psychiatrists who treated Plaintiff during the relevant period, namely, Dr. Hong Rak Choe[6] and Dr. Alicia Saldana;[7] the Commissioner is directed to obtain updated records from Lake Shore Behavioral Health and any other facilities or providers from which Plaintiff has since obtained mental health treatment; Plaintiff is directed to supply the Commissioner with the name and contact information of her current treating psychiatrist in which case the Commissioner will send him or her a Mental Residual Functional Capacity Questionnaire; and the Commissioner will direct Plaintiff to undergo an in-person consultative psychological examination at the Commissioner's expense.

---

[6]

It appears, based on this Court's research, that Dr. Choe is no longer with Lake Shore. The most recent contact information found for him is 1526 Walden Avenue, Suite 400 Cheektowaga, NY 14225-4985; (716) 895-7167 (phone); (716) 896-0318 (fax). See https://health.usnews.com/doctors/hong-choe-88917 (last accessed Sept. 22, 2017). Therefore, any requests for information by the Commissioner to Dr. Choe should not be sent to Lake Shore.

[7]

It appears, based on this Court's research, that Dr. Saldana is also not at Lake Shore any more. The most recent contact information found for Dr. Saldana is VAMC, 3495 Bailey Avenue, Buffalo, NY 14215. See https://health.usnews.com/doctors/alicia-saldana-800636 (last accessed Sept. 22, 2017).

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    September 25, 2017
          Rochester, New York.